■ SUSE EPPEL, Appellant, v WILLIAM C. FREDERICKS, Respon-

dent. [610 NYS2d 254] —Judgment, Supreme Court, Richmond County (John Leone, J.), entered on or about June 5, 1991, which, *inter alia,* dismissed plaintiff's cause of action based on lack of informed consent, unanimously reversed, on the law, to the extent appealed from, and said cause of action for lack of informed consent is reinstated, without costs.

No issues are raised on appeal with respect to the jury's verdict in favor of defendant regarding defendant's alleged malpractice in the actual performance of the surgery and his alleged failure to prescribe antibiotics. However, the trial court did not submit the cause of action for informed consent to the jury. This was erroneous since a prima facie case for such cause was established at trial.

In order to establish a prima facie case for failure to procure a patient's informed consent to a procedure, the plaintiff, pursuant to Public Health Law § 2805-d (2), must establish three elements. "First, the doctor must have failed to apprise her of a reasonably foreseeable risk of the procedure. Secondly, having been informed of the risks and alternatives, the plaintiff must prove that a reasonable person in the plaintiff's condition would have opted against it, and thirdly, the plaintiff must prove that the procedure was the proximate cause of her injury" *(Bernard v Block,* 176 AD2d 843, 848 [2d Dept]).

Additionally, it is axiomatic that in deciding a motion to dismiss for failure to make out a prima facie case, the plaintiff is entitled to the most favorable view of the evidence and must be given the benefit of every reasonable inference which may be drawn from that evidence and the motion should only be granted if there is no rational process by which a jury could find for the plaintiff *(see, Bodeanu v Bertorelli,* 170 AD2d 424, 425 [2d Dept]).

Plaintiff originally saw defendant Dr. Fredericks in October 1978 regarding a painful hemorrhoid problem. Dr. Fredericks surgically removed plaintiff's painful hemorrhoids.

Apparently, the hemorrhoidectomy was successful. The plaintiff experienced no bleeding, infections or difficulty with bowel movement and, thereafter, did not have any hemorrhoids. However, sometime in July, 1979, the plaintiff developed an abscess in her perineal area. Again she consulted with Dr. Fredericks who, in September of 1979, determined that plaintiff had an infected fistula tract just outside the posterior wall of her vagina which extended to the rectum. Dr. Fredericks determined that the proper procedure was to re-

move the fistula through surgery. According to the plaintiff, Dr. Fredericks did not discuss with her any alternatives to the removal of the fistula nor did he tell plaintiff of the risks associated with this procedure, called a fistulotomy. The consent form signed in the hospital indicated that fistulectomy was to be performed.

The defendant doctor testified that while he had no specific recollection of discussing the options with the plaintiff, he always discussed such matters with his patients and explained to them the attendant risk to any procedure.

Following Dr. Fredericks' surgery, plaintiff experienced "leaking" from her bowels and over the course of the next several months, the plaintiff experienced occasional loss of control of her bowels. Indeed, there was established at trial that plaintiff suffered damage to her sphincter muscles which resulted in incontinence, as well as other bowel problems.

Plaintiff presented an expert, Dr. Fietell, at trial. Dr. Fietell, the acting director of the Department of Proctology at Beth Israel Hospital, claimed that the fistulotomy performed by defendant doctor in 1979 represented a departure from accepted medical practice. Dr. Fietell opined that the failure to discuss another alternative, i.e., a "Seton procedure", not requiring any cutting, would represent a departure from accepted medical practice.

According to plaintiff, none of the attendant risks associated with a fistulotomy or other options were discussed by Dr. Fredericks with her. The testimony by the doctor that he always discussed such matters with his patients raised a question of fact which should have been left to the jury. Thus, the first element of a cause for lack of informed consent, *i.e.,* the doctor's failure to apprise the patient of reasonably foreseeable risks of the procedure, was met.

The second element requires that having been informed of the risk and alternatives the plaintiff must prove that a reasonable person in the plaintiff's condition would have opted against the procedure performed. Dr. Fietell's testimony that a Seton procedure would have been much more medically sound and less dangerous because the risk of cutting the sphincter muscle would be eliminated, together with plaintiff's testimony that no alternatives were discussed with her, is sufficient to satisfy this second element. Finally, Dr. Fietell's testimony satisfied the third element which requires that the plaintiff establish that the procedure performed was the proximate cause of her injury.

In sum, viewing the evidence in the light most favorable to the plaintiff, as we must, plaintiff presented sufficient evidence to establish a prima facie case of medical malpractice based on lack of informed consent. Accordingly, this cause of action should have been submitted to the jury. Concur—Rosenberger, J. P., Ross, Asch, Rubin and Tom, JJ.